# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SAM WHITEMAN, on behalf of himself
and others similarly situated,

     *Plaintiff*,

v.

KFORCE INC.,

     *Defendant*.

Civil Action No. 8:22-cv-00056-VMC-CPT

Collective Action

## NAMED-PLAINTIFF'S MOTION AND MEMORANDUM FOR ISSUANCE OF NOTICE PURSUANT TO SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.    PROCEDURAL HISTORY ......................................................................... 2

III.    STATEMENT OF FACTS ........................................................................... 6

    A.    Recruiters at Kforce Perform the Same Job Duties ............................. 6

    B.    Kforce Compensates Recruiters under the Same Plan ........................ 11

    C.    Recruiters Regularly Have to Work over Forty Hours Each Week to
        Complete Their Job Duties ............................................................... 11

IV.    ARGUMENT ......................................................................................... 13

    A.    Named-Plaintiff Exceeds the Lenient Standard that Courts Apply in
        Granting Conditional Certification Motions under the FLSA ............ 13

    B.    Named-Plaintiff Meets the Light Burden to Show Other Employees
        Desire to Opt-in to this Action ........................................................ 15

    C.    Named-Plaintiff's Evidence Sufficiently Demonstrates that the
        Collective Is Similarly Situated with Respect to Pay ......................... 17

    D.    Named-Plaintiff's Evidence Sufficiently Demonstrates that the
        Collective Is Similarly Situated with Respect to Their Job Duties ...... 18

V.    THE COURT SHOULD APPROVE NAMED-PLAINTIFF'S
    PROPOSED NOTICE PLAN ................................................................. 21

VI.    CONCLUSION ..................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Abelson v. Sarasota Cty., Fla.*
   2020 WL 3971830 (M.D. Fla. July 14, 2020)...................................................... 20

*Ciani v. Talk of the Town Restaurants,*
   2015 WL 226013 (M.D. Fla. Jan. 16, 2015) ...................................................... 14

*Coderre v. Wilson Waddell Co., LLC,*
   2015 WL 12531979 (S.D. Fla. Jan. 15, 2015) .................................................... 18

*Compagnone v. DL Pool Serv., LLC,*
   2016 WL 6575087 (M.D. Fla. Nov. 7, 2016)...................................................... 18

*Destin v. World Fin. Grp.,*
   Case No. 1:13-cv-1092-CAP, ECF No. 211 (N.D. Ga. Apr. 9, 2015).................. 23

*Diggs v. Ovation Credit Servs., Inc.,*
   2019 WL 4673813 (M.D. Fla. Sept. 25, 2019) ................................................... 15

*Elliot-Brand v. Kforce,*
   Case No. 20STCV49193 (L.A. Cty. Sup. Ct.)....................................................... 5

*Godhigh v. Savers, LLC,*
   2016 WL 7406659 (N.D. Cal. Dec. 22, 2016) ................................................... 23

*Gofton, et al. v. Kforce Inc.,*
   Case No. 2:20-cv-04886 (E.D. Pa.) ............................................................... 2, 3

*Gonzalez v. TZ Ins. Solutions,*
   2014 WL 1248154 (M.D. Fla. Mar. 26, 2014) ................................................... 20

*Hawkins v. JPMorgan Chase Bank, N.A.,*
   Case No. 8:19-cv-2174 (M.D. Fla.) ..................................................13, 16, 19, 22

*Hoffman-LaRoche,*
   493 U.S. 165 (1989)........................................................................................ 21

*Irvine v. Destination Wild Dunes Mgmt., Inc.,*
   132 F.Supp.3d 707 (D.S.C. 2015) ................................................................... 22

*McGhee v. Toms King, LLC,*
    2021 WL 1176097 (W.D. Pa. Mar. 29, 2021) ................................................... 24

*Metzler v. Med. Mgmt. Int'l, Inc.,*
    2020 WL 1674310 (M.D. Fla. Mar. 4, 2020) ................................................*passim*

*Morgan v. Fam. Dollar Stores, Inc.,*
    551 F.3d 1233 (11th Cir. 2008) ...................................................................13, 14

*Palma v. MetroPCS Wireless, Inc.,*
    2013 WL 6597079 (M.D. Fla. Dec. 16, 2013)....................................15, 16, 18, 19

*Roberson v. Rest. Delivery Devs., LLC,*
    2017 WL 4124862 (M.D. Fla. Sept. 18, 2017) ........................................ 14, 16, 20

*Sellers v. Sage Software, Inc.,*
    2018 WL 5631106 (N.D. Ga. May 25, 2018).................................................... 23

*Sylvester v. Wintrust Fin. Corp.,*
    2013 WL 5433593 (N.D. Ill. Sept. 30, 2013).................................................... 21

*Vondriska v. Premier Mort. Funding, Inc.,*
    564 F.Supp.2d 1330 (M.D. Fla. 2007).............................................................. 15

**Statutes**

29 U.S.C. § 216(b) ................................................................................................. 13

**Other Authorities**

Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 295
    (2008) ............................................................................................................. 23

## I.   INTRODUCTION

Defendant Kforce Inc. ("Kforce") is a nationwide staffing agency that employs Recruiters to search employment databases to find potential job candidates whose credentials match the job qualifications set by Kforce's clients. Named-Plaintiff Sam Whiteman, a former Kforce Recruiter, alleges that Kforce uniformly misclassified its Recruiters as exempt from overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and he requests Court approval to send notice of this action to a nationwide class of exempt-classified Recruiters who worked for Kforce since May 11, 2018, and who did not sign an arbitration agreement. Notice should issue because Named-Plaintiff has met the lenient standard of showing that a class of similarly situated employees would be interested in joining a collective action. The well-pleaded allegations in the Complaint, the declarations from seven Recruiters who worked at seven different Kforce offices in five different states, and Kforce's job postings for Recruiter positions throughout the country demonstrate that Kforce assigns Recruiters the same primary job duties, treats Recruiters as one homogenous group, uniformly classifies them as "exempt" from FLSA overtime protections, regardless of where they work, and requires them to regularly work overtime.

1

Named-Plaintiff requests that the Court approve the notice, consent form, and reminder postcard for distribution to the potential collective members, as well as the proposed timeline and method of distribution.

## II.   PROCEDURAL HISTORY

Named-Plaintiff's Counsel has represented and is representing Recruiters in other overtime actions filed against Kforce, including a class and collective action that was resolved on behalf of a class of Recruiters who worked for Kforce in Pennsylvania,[1] four pending individual arbitrations, and a pending class action lawsuit raising claims under California law.[2] *See* ECF 32, Notice of Related Cases.

The *Gofton* action raised overtime claims under the Pennsylvania Minimum Wage Act and the FLSA. Immediately after Kforce's Counsel[3] appeared in the litigation, Named-Plaintiff's Counsel informed Kforce's Counsel that they also represented former recruiters of Kforce who were employed in California and asked Kforce if it would agree to waive its defense of lack of personal jurisdiction for those individuals to facilitate resolution of the claims in one proceeding. Kforce declined to

---

[1] *Gofton, et al. v. Kforce Inc.,* Case No. 2:20-cv-04886, filed in the United States District Court for the Eastern District of Pennsylvania.

[2] *Cook v. Kforce Inc.*, Case No. 2:21-cv-2453, previously pending in the United States District Court for the Eastern District of California and now pending in the Superior Court of the State of California for the County of Los Angeles as *Cook, et al. v. Kforce Inc.*, Case No. 22STCV00602.

[3] At all relevant times, Kforce has been represented by attorneys at the law firm Seyfarth Shaw LLP.

waive that defense, but it agreed to enter into a tolling agreement while the parties pursued global resolution of the Pennsylvania class, California class, and FLSA nationwide collective claims.

The Parties attended a settlement conference with the magistrate judge, but they did not resolve the claims, and Named-Plaintiff's Counsel filed the *Cook* action in federal court on March 19, 2021. Following the filing of the *Cook* action, the Parties settled the *Gofton* action on behalf of a class of Recruiters who worked in Pennsylvania. The Parties also resumed their settlement discussions for Recruiters who worked outside of Pennsylvania, scheduled a mediation for September 10, 2021, and jointly moved to stay the *Cook* action and the four pending arbitrations. The *Cook* court, however, denied the joint motion to stay. In light of the substantial litigation expense and effort the parties would expend in briefing the certification issues and responding to discovery on claims that could be settled in mediation, the parties agreed to toll plaintiff Cook's class claims pending mediation and enter a voluntary dismissal without prejudice.

The Dismissal and Tolling Agreement, executed June 25, 2021, stipulated that Cook or a similarly situated employee represented by Cook's attorneys would refile

the class and collective action claims if the mediation was unsuccessful. Ex. A, Tolling Agreement.

The Parties also included in the September 10th mediation a related California action that had been filed in Los Angeles Superior Court based on the same misclassification theory and that asserted overlapping wage and hour claims under California law.[4] The *Elliott-Brand* matter did not raise any claims under the FLSA. At the time of the mediation, plaintiff Elliott-Brand, who had signed an arbitration agreement, was waiting for a ruling on Kforce's motion to compel her claims to arbitration.

The Parties were not successful resolving the claims at the September 10th mediation. Named-Plaintiff Whiteman re-filed this nationwide FLSA Collective Action in this Court where KForce is subject to general jurisdiction on the FLSA claims, and Cook re-filed the state law claims in California state court. Kforce gave notice of its termination of the Parties' tolling agreement on January 25, 2022, and the tolling agreement expired thirty days later on February 24, 2022.

On February 24, 2022, Kforce's attorneys revealed to Named-Plaintiff's

---

[4] *Elliott-Brand v. Kforce Inc.*, Case No. 20STCV4993, pending in the Superior Court of the State of California for the County of Los Angeles.

Counsel for the first time that Kforce participated in a second, undisclosed mediation with Elliott-Brand's counsel in November 2021 and reached a settlement to resolve not only the claims at issue in the *Elliott-Brand* matter but also the nationwide FLSA claims Named-Plaintiff and his Counsel had been pursuing. The day after the Complaint was filed in this action, plaintiff Elliott-Brand amended her complaint to assert an FLSA collective action. Importantly, the proposed settlement in the *Elliott-Brand* matter does not impact the claims of any individual who files a consent to join this action. The proposed settlement excludes from the class definition: "Any individuals who have asserted wage and hour claims against Defendant through counsel other than Plaintiffs' Counsel." *Elliot-Brand v. Kforce*, Case No. 20STCV49193 (L.A. Cty. Sup. Ct.), Declaration of Jonathan M. Lebe in Support of Pls.' Mot. for Prel. Apprv. of Class Action Settlement.

Elliott-Brand filed a motion to approve the settlement on February 15, 2022, and on March 14, 2022, Named-Plaintiff's Counsel filed a Motion to Intervene and Object to the Approval of the Settlement. Beyond the problems of how the proposed settlement was reached through a reverse auction, the settlement contains hallmarks of a substantively unfair settlement: the FLSA collective members in the second filed

FLSA action are recovering an exceedingly low settlement amount equating to less than one hour a week of unpaid overtime and are releasing claims not even pleaded in the operative complaint. The Motion for Leave to Intervene is set for hearing on May 19, 2022. Plaintiff Elliott-Brand's Motion for Preliminary Approval was entered and continued to this same date.

### III.    STATEMENT OF FACTS

#### A.    Recruiters at Kforce Perform the Same Job Duties.

Kforce employs Recruiters across the county under various internal recruiting job titles. *See* First Am. Compl. ("FAC"), ECF 43, ¶ 48-49. Regardless of the internal job title assigned to them, all Recruiters perform the same basic job duties: they search employment databases, including Indeed, Monster, LinkedIn, Careerbuilder, and Kforce's internal system, RecruitMax, to identify prospective candidates whose credentials match the job qualifications set by Kforce's clients, and if they find a match, they attempt to contact the prospective candidate. *See* FAC, ECF No. 43 ¶¶ 33-39, 55; Ex. B, Declaration of Sam Whiteman ¶¶ 8-21 ("Whiteman Decl.") (describing his job duties as a Recruiter in the Overland Park, Kansas office working under the internal job titles Talent Associate and MM Talent Associate); Ex. C, Declaration of Maxwell Olson ¶¶ 4-18 ("Olson Decl.") (describing his job duties as a Recruiter in the Tampa,

Florida office working under the internal job title International Special Solutions Talent Associate); Ex. D, Declaration of Felipe Restrepo ¶¶ 8-25 ("Restrepo Decl.") (describing his job duties as a Recruiter in the Reston, Virginia office working under the internal job titles VMO Recruiter Tech and National Delivery Representative Tech); Ex. E, Declaration of Adam Kimbrel ¶¶ 8-22 ("Kimbrel Decl.") (describing his job duties as a Recruiter in the Philadelphia, Pennsylvania and King of Prussia, Pennsylvania offices working under the internal job title Talent Representative FA); Ex. F, Declaration of Khyran Shank ¶¶ 8-21 ("Shank Decl.") (describing his job duties as a Recruiter in the Glendale, California and Culver City, California offices working under the internal job title Talent Representative); Ex. G, Declaration of Jessica Cook ¶¶ 9-22 ("Cook Decl.") (describing her job duties as a Recruiter in the Glendale, California and Culver City, California offices working under the internal job title Talent Representative); Ex. H, Kforce Job Postings (various Recruiting positions throughout the country and identifying them as "the Recruiter" and "Our Recruiters").

In their capacity as Recruiters working under the internal job title ISS Talent Associates, Opt-in Plaintiffs Alexander Lomaglio and Maxwell Olson worked with

Recruiters in offices across the country and learned that Recruiters all performed the same basic job duties. Ex. C, Olson Decl. ¶¶ 9, 13; Ex. I, Declaration of Alexander Lomaglio ¶¶ 9, 10, 13 ("Lomaglio Decl."). Additionally, in his capacity as a Recruiter working under the internal job titles VMO Recruiter Tech and National Delivery Representative Tech, Felipe Restrepo attests that his job duties mirrored those of the Recruiters in Tampa, Florida; Columbus, Ohio; Wilmington, Delaware; New York; and Washington, D.C. Ex. D, Restrepo Decl. ¶¶ 21-25. Named-Plaintiff Whiteman learned that Recruiters in the Denver and St. Louis offices performed the same job duties as he performed. Ex. B, Whiteman Decl. ¶¶ 20-21.

Kforce requires Recruiters to use written templates, forms and guidelines when communicating with potential candidates by phone, email and/or private message to obtain prescribed information from potential candidates. *See* FAC, ECF No. 43 ¶ 33; Ex. B, Whiteman Decl. ¶¶ 10-11, 15, 19; Ex. C, Olson Decl. ¶¶ 7-8, 13, 18; Ex. D, Restrepo Decl. ¶¶ 6, 10, 11, 15, 19; Ex. E, Kimbrel Decl. ¶¶ 6, 10, 11, 15, 19; Ex. F, Shank Decl. ¶¶ 6, 10, 11, 15, 19; Ex. I, Lomaglio Decl. ¶¶ 7, 8, 13, 18.

These templates, guidelines and procedures are the same regardless of which location the Recruiter worked or for which Manager the Recruiter worked. *See* Ex. B,

Whiteman Decl. ¶¶ 8-21; Ex. C, Olson Decl. ¶¶ 4-18; Ex. D, Restrepo Decl. ¶¶ 8-25;

Ex. E, Kimbrel Decl. ¶¶ 8-22; Ex. F, Shank Decl. ¶¶ 8-21; Ex. G, Cook Decl. ¶¶ 9-22;

Ex. I, Lomaglio Decl. ¶¶ 4-18 (explaining the same processes and procedures were

followed at each location).

Once Recruiters confirm that a potential candidate meets the client's minimum

qualifications and is interested in the open position, Recruiters forward a list of these

potential candidates to Recruiters' Managers and Account Managers. *See* FAC, ECF

No. 43 ¶¶ 31-35; Ex. B, Whiteman Decl. ¶ 12; Ex. C, Olson Decl. ¶ 10; Ex. D, Restrepo

Decl. ¶ 12; Ex. E, Kimbrel Decl. ¶ 12; Ex. F, Shank Decl. ¶ 12; Ex. G, Cook Decl. ¶

13; Ex. I, Lomaglio Decl. ¶ 10. Recruiters' primary job duty is to simply collect as

many potential candidates that meet the required criteria as possible and present them

to Managers and/or Account Managers. Ex. B, Whiteman Decl. ¶ 7; Ex. D, Restrepo

Decl. ¶ 7; Ex. E, Kimbrel Decl. ¶ 7; Ex. F, Shank Decl. ¶ 7; Ex. G, Cook Decl. ¶ 8.

From there, Account Managers exclusively decide which candidates are presented to

Kforce's clients for their hiring considerations. *See* FAC, ECF No. 43 ¶¶ 35-36; Ex. B,

Whiteman Decl. ¶¶ 13-14; Ex. C, Olson Decl. ¶¶ 11-12; Ex. D, Restrepo Decl. ¶¶ 13-

14; Ex. E, Kimbrel Decl. ¶¶ 13-14; Ex. F, Shank Decl. ¶¶ 13-14; Ex. G, Cook Decl. ¶¶

13-15; Ex. I, Lomaglio Decl. ¶¶ 11-12 (explaining that Recruiters have no decisionmaking authority as to whether potential candidates will even be presented to Kforce's clients for consideration and that Recruiters have no contact with Kforce's clients); Ex. H (Kforce Job Postings). Kforce requires Recruiters to make a minimum number of calls to potential candidates on a daily, weekly, monthly, and quarterly basis, and Recruiters' Managers monitored their calls to make sure they were meeting their required metrics. Ex. B, Whiteman Decl. ¶¶ 10, 25, 27 (required to make a minimum of 40 outbound calls each day); Ex. D, Restrepo Decl. ¶¶ 10, 29, 31 (requirement of 40 outbound calls each day); Ex. E, Kimbrel Decl. ¶¶ 10, 26, 28 (requirement of 50 outbound calls each day or 2 hours on the phone each day); Ex. F, Shank Decl. ¶¶ 10, 25, 27 (minimum of 50 outbound calls or two hours on the phone each day). Recruiters' performance metrics are regularly discussed and compared company-wide. Ex. D, Restrepo Decl. ¶¶ 23, 24 (explaining that metrics from Recruiters from Virginia, Florida, Ohio, Delaware, New York and Washington, D.C. offices were discussed at regular meetings "for the purpose of providing a competitive boost" and individual metrics from the Virginia, Ohio, Delaware and New York offices were posted for display on a board in the Reston, Virginia office); Ex. E,

Kimbrel Decl. ¶ 22 (describing meetings held among the Philadelphia, King of Prussia, Baltimore, New York and Boston offices "to create a competitive environment" and compare the number of job candidates among offices).

### B.    Kforce Compensates Recruiters under the Same Plan.

Kforce classifies Recruiters as exempt from overtime nationwide. *See* FAC, ECF No. 43 ¶¶ 7-13; Ex. B, Whiteman Decl. ¶ 22; Ex. C, Olson Decl. ¶ 19; Ex. D, Restrepo Decl. ¶ 26; Ex. E, Kimbrel Decl. ¶ 23; Ex. F, Shank Decl. ¶ 22; Ex. J, *Gofton*, ECF No. 18, Answer, at ¶¶ 7, 41. Kforce pays Recruiters based on a company-wide compensation plan that does not compensate them for overtime wages. FAC, ECF No. 43 ¶¶ 9, 12; Ex. B, Whiteman Decl. ¶ 27; Ex. C, Olson Decl. ¶ 23; Ex. D, Restrepo Decl. ¶ 31; Ex. E, Kimbrel Decl. ¶ 28; Ex. F, Shank Decl. ¶ 27.

### C.    Recruiters Regularly Have to Work over Forty Hours Each Week to Complete Their Job Duties.

Recruiters regularly must work more than forty hours per week. Ex. B, Whiteman Decl. ¶¶ 23-26; Ex. C, Olson Decl. ¶¶ 20-23; Ex. D, Restrepo Decl. ¶¶ 27-30; Ex. E, Kimbrel Decl. ¶¶ 24-27; Ex. F, Shank Decl. ¶¶ 23-26; Ex. G, Cook Decl. ¶¶ 24-27; Ex. I, Lomaglio Decl. ¶¶20-21 (explaining that they all regularly worked over forty hours per week and the circumstances that led to the extended hours). Kforce

requires its Recruiters, regardless of the office where they work, to arrive at work and be prepared to participate in a daily meeting that commences at 8:00 a.m. Ex. B, Whiteman Decl. ¶ 24; Ex. C, Olson Decl. ¶ 21; Ex. D, Restrepo Decl. ¶ 28; Ex. E, Kimbrel Decl. ¶ 25; Ex. F, Shank Decl. ¶ 24; Ex. G, Cook. Decl. ¶ 25; Ex. I, Lomaglio Decl. ¶ 21. Recruiters are also required to stay at the office until at least 5:00 p.m. *Id.* They often worked past that time to attend required work meetings, participate in "power hour" call sessions, participate in recruiting competitions among offices, to satisfy the daily call quota they are required to reach, and to speak to potential candidates outside of candidates' regular business hours and in other time zones. Ex. B, Whiteman Decl. ¶¶ 24-25; Ex. C, Olson Decl. ¶ 21; Ex. D, Restrepo Decl. ¶¶ 28, 29; Ex. E, Kimbrel Decl. ¶¶ 25-26; Ex. F, Shank Decl. ¶ 24; Ex. G, Cook Decl. ¶ 26; Ex. I, Lomaglio Decl. ¶ 21 (explaining the circumstances that led to the extended hours). Recruiters also performed work from home on nights and weekends, including: writing emails to their Managers summarizing the work they performed that day and preparing a call list for the following day. Ex. B, Whiteman Decl. ¶ 26; Ex. C, Olson Decl. ¶ 22; Ex. D, Restrepo Decl. ¶ 30; Ex. E, Kimbrel Decl. ¶ 27; Ex. F, Shank Decl. ¶ 26; Ex. G, Cook Decl. ¶ 27.

IV.    **ARGUMENT**

With this Motion, Named-Plaintiff Whiteman respectfully requests permission to notify other Recruiters nationwide who have not signed an arbitration agreement of the case and their right to join it pursuant to the FLSA, 29 U.S.C. § 216(b).[5] Excluded from the collective are the approximately 39 individuals who released their FLSA claims by participating in the *Gofton* settlement.

A.    **Named-Plaintiff Exceeds the Lenient Standard that Courts Apply in Granting Conditional Certification Motions under the FLSA.**

The FLSA authorizes private parties to bring an overtime claim collectively, "[o]n behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions promote justice by allowing resources to be pooled to facilitate the efficient resolution of common issues in a single proceeding. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1265 (11th Cir. 2008).

Certification of collective actions under FLSA generally proceed in two stages. *Metzler v. Med. Mgmt. Int'l, Inc.*, 2020 WL 1674310, at *2 (M.D. Fla. Mar. 4, 2020) (Covington, J.). At the first stage, the Court determines only whether the collective defined in the complaint satisfies the "similarly situated" requirement of Section

---

[5] Mindful of this Court's decision in *Hawkins v. JPMorgan Chase Bank, N.A.*, Case No. 8:19-cv-2174, Named Plaintiff has excluded from the collective individuals who signed arbitration agreements.

216(b) so that notice may issue to potential collective members and allow them to decide whether to join the case. *Id*.

The standard for determining whether similarly situated individuals should receive notice is "flexib[le]," "fairly lenient," *Morgan*, 551 F.3d at 1260–61, and, as this Court has explained, "'typically results in conditional certification of a representative class.'" *Roberson v. Rest. Delivery Devs., LLC*, 2017 WL 4124862, at *2 (M.D. Fla. Sept. 18, 2017) (quoting *Hipp*, 252 F.3d at 1218) (J., Covington). The more stringent second-stage analysis does not apply until after opt-in plaintiffs are given an opportunity to join the case and discovery is completed. *See Morgan*, 551 F.3d at 1261.

At the notice stage, the Court determines "whether there are other employees who desire to opt into the action and whether the employees who desire to opt-in are similarly situated." *Metzler*, 2020 WL 1674310, at *2 (citation omitted). For purposes of evaluating whether employees are similarly situated at the notice stage, Named-Plaintiff must only show that the employees are similarly situated with respect to their pay provisions and job requirements. *Morgan*, 551 F.3d at 1259. The Court makes this "decision [] usually based on the pleadings and any affidavits which have been submitted ...." *Ciani v. Talk of the Town Restaurants*, 2015 WL 226013, at *2 (M.D. Fla.

14

Jan. 16, 2105) (citation omitted). At this early stage, the Court does not consider the merits of Named-Plaintiff's FLSA claim. *Metzler*, 2020 WL 1674310, at *1; *Diggs v. Ovation Credit Servs., Inc.*, 2019 WL 4673813, at *4 (M.D. Fla. Sept. 25, 2019). And, any variations among the proposed collective's "'specific job duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage.'" *Palma v. MetroPCS Wireless, Inc.*, 2013 WL 6597079, at *5 (M.D. Fla. Dec. 16, 2013) (quoting *Vondriska v. Premier Mort. Funding, Inc.,* 564 F.Supp.2d 1330, 1335 (M.D. Fla. 2007)) (Covington, J.).

**B.    Named-Plaintiff Meets the Light Burden to Show Other Employees Desire to Opt-in to this Action.**

As this Court has found, the burden on a plaintiff to demonstrate a reasonable basis that other employees desire to opt into an action is "light." *Metzler,* 2020 WL 1674310, at *3. At the early stage of litigation, like Named-Plaintiff's action here, "courts will conditionally certify FLSA collectives even with relatively few plaintiffs present at this stage of the litigation." *Id.*

Together with the Named-Plaintiff's Consent, nine former Recruiters of Defendant have filed signed Consents to join this litigation.[6] Additionally, other

---

[6] Five of the nine Opt-in Plaintiffs have signed arbitration agreements. Opt-in Plaintiffs understand

Recruiters have demonstrated an interest in pursuing FLSA overtime claims against Kforce: two Recruiters pursued FLSA claims on behalf of similarly situated Recruiters who worked for Kforce in Pennsylvania and four Recruiters are pursuing their individual FLSA claims in arbitration. FAC, ECF No. 43 ¶ 46. Three declarants attest that they believe other individuals will join this case if they are made aware of its existence. Ex. B, Whiteman Decl. ¶ 31; Ex. C, Olson Decl. ¶ 26; Ex. I, Lomaglio Decl. ¶ 25. This participation rate at the early stage of the litigation satisfies Named-Plaintiff's light burden to show employees desire to opt into the lawsuit. *Hawkins*, Case No. 8:19-cv-2174, ECF No. 104 (conditionally certifying a nationwide collective based on the submission of affidavits from six individuals interested in joining a collective action and the consents of the named-plaintiff and an additional opt-in plaintiff) (Covington, J.); *Palma*, 2013 WL 6597079, at *2 (conditionally certifying a nationwide collective action based on eight declarations from individuals who worked across three states) (Covington, J.); *Roberson*, 2017 WL 4124862, at *1, *3, *5 (conditionally certifying nationwide collective in independent contractor misclassification action based on three consent forms and four declarations attesting to classification status and

---

that Kforce intends to compel their claims to arbitration.

unpaid overtime) (Covington, J.).

**C.    Named-Plaintiff's Evidence Sufficiently Demonstrates that the Collective Is Similarly Situated with Respect to Pay.**

Named-Plaintiff has only a "modest" burden to demonstrate the collective is similarly situated with respect to their compensation. *Metzler*, 2020 WL 1674310, at *4. Named-Plaintiff has submitted seven declarations from former Recruiters who attest to the same unlawful payment practices alleged in the Complaint in seven different Kforce offices in five states. The declarants attest that Kforce paid them a salary; that they regularly worked in excess of forty hours in individual workweeks; and that Kforce did not pay them overtime compensation. Ex. B, Whiteman Decl. ¶¶ 22-30; Ex. C, Olson Decl. ¶¶ 19-25; Ex. D, Restrepo Decl. ¶¶ 26-33; Ex. E, Kimbrel Decl. ¶¶ 23-30; Ex. F, Shank Decl. ¶¶ 22-30; Ex. G, Cook Decl. ¶¶ 23-31; Ex. I, Lomaglio Decl. ¶¶ 19-24. Kforce's job postings for Recruiter positions throughout the country refer to a "base salary" that Recruiters are paid. Ex. H (Kforce Job Postings). In fact, Kforce admitted in other litigation that it classifies Recruiters as exempt from overtime. *See* Ex. J, *Gofton*, Answer, at ¶ 7, ECF No. 18; *Cook,* Answer at ¶ 7, ECF No. 26 ("Defendant… admits that Defendant employs individuals in various recruiting positions that are classified as exempt from the federal and California

overtime laws."). This Court has found virtually identical evidence sufficient under FLSA Section 216(b) in actions where, like here, the plaintiff alleged the defendant improperly exempted a putative collective from overtime compensation. *Metzler*, 2020 WL 1674310, at *3 (conditionally certifying collective action alleging misclassification and finding prong satisfied where declarants averred that the defendant paid them salary and no overtime compensation) (Covington, J.); *Palma*, 2013 WL 6597079, at *5 (same) (J. Covington). The same result is warranted here.

### D.    Named-Plaintiff's Evidence Sufficiently Demonstrates that the Collective Is Similarly Situated with Respect to Their Job Duties.

Named-Plaintiff also alleges the collective engages in similar job duties, and based on these types of allegations, courts regularly conditionally certify the collective. *Compagnone v. DL Pool Serv., LLC*, 2016 WL 6575087, at *1, *4-*5 (M.D. Fla. Nov. 7, 2016) (certifying conditional collective of service technicians based on allegations that individuals "performed the same or similar job duties, worked similar hours, and were paid pursuant to the same salary compensation plan"); *Coderre v. Wilson Waddell Co., LLC*, 2015 WL 12531979, at *3 (S.D. Fla. Jan. 15, 2015) (same).

Together with these allegations, Named-Plaintiff and the declarants testify they engaged in the same job duties: filling a pipeline of potential job candidates for the

Managers to consider by searching online databases and reaching out to individuals that met the criteria communicated to them. *See* Section III.A, *supra*. Recruiters use Kforce's written templates, forms and guidelines when communicating with candidates by phone, email and private message to obtain prescribed information from potential candidates. *Id.*

Four declarants worked with Recruiters in offices in other states and attest that Recruiters in other states performed the same job duties they performed. Ex. B, Whiteman Decl. ¶¶ 20-21; Ex. C, Olson Decl. ¶¶ 9, 13; Ex. I, Lomaglio Decl. ¶¶ 9, 10, 13; Ex. D, Restrepo Decl. ¶¶ 21-25. Recruiters' job duties are also identically reflected in Kforce's nationwide job announcements. *See* Ex. H (Kforce Job Postings).

This Court has conditionally certified collectives based on substantially similar evidence. *Hawkins*, Case No. 8:19-cv-2174, ECF No. 104 (conditionally certifying nationwide collective in overtime exemption case based on evidence of common policies and procedures) (Covington, J.); *Palma*, 2013 WL 6597079, at *2 (conditionally certifying nationwide collective in overtime exemption case based on job descriptions posted in six states with similar duties and eight declarants attesting to completing "'specific training'" and performing similar standardized duties);

*Roberson*, 2017 WL 4124862, at *2 (conditionally certifying nationwide collective in independent contractor misclassification action based on five declarations); *Metzler*, 2020 WL 1674310, at *1, *3 (conditionally certifying nationwide collective in managerial exemption action based on declarations showing the "plaintiffs knew of the similar nature of the work performed by other [collective members] because they were required to attend weekly conference calls … in which [collective members] would discuss the work they were performing" and that the "plaintiffs underwent similar training, despite working in [locations] across the country" and performed similar job duties); *Gonzalez v. TZ Ins. Solutions*, 2014 WL 1248154, at *3 (M.D. Fla. Mar. 26, 2014) (conditionally certifying collective for an off-the-clock claim based on five declarations showing collective members "were paid an hourly rate, worked similar hours, and were eligible for overtime compensation" that the defendant did not pay when individuals worked in excess of forty hours in a workweek) (Covington, J.); *Abelson v. Sarasota Cty., Fla.*, 2020 WL 3971830, at *1 (M.D. Fla July 14, 2020) (conditionally certifying collective in overtime exemption action based on two declarations showing employees "were classified as non-exempt from overtime compensation and worked overtime hours for which they were not properly

compensated") (Covington, J.). The same result is warranted here.

## V.    THE COURT SHOULD APPROVE NAMED-PLAINTIFF'S PROPOSED NOTICE PLAN

Upon satisfaction of the FLSA conditional certification standard, a plaintiff should disseminate notice to inform potential opt-ins about the action and their right to participate. *See Hoffman-LaRoche*, 493 U.S. 165, 169-71 (1989). Court-supervised notice ensures that the notification procedure will be accomplished in an efficient, accurate manner. *Id.* at 170-71.

"Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Sylvester v. Wintrust Fin. Corp.*, No. 12-cv-01899, 2013 WL 5433593, at *6 (N.D. Ill. Sept. 30, 2013) (internal citations omitted).

Named-Plaintiff seeks a sixty day opt-in period from the date Notice is disseminated and an Order: (1) requiring Kforce to disclose the names, job titles, start and end dates, last known mailing addresses, work and last known personal email addresses, mobile telephone numbers, and work locations of the collective action members (in useable electronic form to reduce delay in sending notice) within seven days from the entry of an Order; (2) authorizing Named-Plaintiff's counsel to send the

21

Notice and Consent Forms, attached respectively as Ex. K and Ex.L, by mail and to personal and work email addresses to the collective action members and allowing collective members to submit their Consent to Join Forms through mail or a web-based portal; and (3) permitting Named-Plaintiff's counsel to send a reminder postcard via mail and email thirty days after the initial Notice is issued to recipients who have not yet submitted a Consent Form.

Email notice is increasingly standard and was approved by this Court in *Hawkins*, No. 8:19-cv-2174, ECF 104. According to a Pew Research Institute report, approximately thirty-six million Americans move each year and often take their cell phone numbers with them: forty percent of U.S. adults have cell phone numbers that do not match the state they live in; and forty percent of urban dwellers have a number that does not match the city where they live.[7] This phenomenon has led courts to conclude that email addresses and cell phone numbers are "the most consistent and reliable method of communication" because "traditional methods of communication via regular mail and land line telephone numbers [have] quickly become obsolete." *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp.3d 707, 711 (D.S.C. 2015).

---

[7] https://pewrsr.ch/2Ua8kht (last visited April 12, 2022).

Named-Plaintiff also requests approval to retain an administration firm to create a standalone website through which opt-ins can electronically submit their Consent Forms. *See, e.g., Godhigh v. Savers, LLC*, 2016 WL 7406659, at *1-2 (N.D. Cal. Dec. 22, 2016) (allowing for a standalone website); *see also Destin v. World Fin. Grp.*, No. 1:13-cv-1092-CAP, ECF No. 211, at 4 (N.D. Ga. Apr. 9, 2015) (approving notice that allowed the potential opt-in plaintiffs to join online by going to a website and electronically signing the consent form); *Sellers v. Sage Software, Inc.*, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018) (same).

Named-Plaintiff seeks leave to issue a reminder postcard thirty days into the notice period to reduce the likelihood that the interested collective action members will overlook the Notice. The form of Named-Plaintiff's reminder postcard is attached as Ex. M. It is well documented that people often disregard collective action notices. *See* Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008). Granting a reminder notice will help facilitate the underlying and broad remedial purpose of the FLSA of ensuring that potential collective members have the opportunity to learn about and join the lawsuit if they so choose. Further, the reminder

notice causes Defendant no prejudice.

As one court recently held when finding a reminder letter to be reasonable, "[r]ather than being redundant, a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter." *McGhee v. Toms King, LLC*, No. 2:19-cv-1470, 2021 WL 1176097, at *10 (W.D. Pa. Mar. 29, 2021) (internal quotation omitted). This Court should do the same, to ensure that potential opt-in plaintiffs have full opportunity to learn of the case and be notified of their rights.

## VI.    CONCLUSION

Because Named-Plaintiff has satisfied his modest burden, he respectfully requests the Court grant his Motion and enter an order: (1) conditionally certifying the proposed collective; (2) approving Named-Plaintiff's proposed Notice and distribution plan; and (3) requiring Defendant Kforce Inc. to produce the collective member data discussed herein.

Dated: April 12, 2022

Respectfully submitted,

/s/ *Maureen A. Salas*
One of the Attorneys for Plaintiff

Maureen A. Salas*
msalas@flsalaw.com
Ben K. Schott
bschott@flsalaw.com
Michael Tresnowski*
mtresnowski@flsalaw.com
**Werman Salas P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone No.: (312) 419-1008
Fax No.: (312) 419-1025

Benjamin L. Davis, III*
bdavis@nicholllaw.com
Kelly A. Burgy*
kaburgy@nicholllaw.com
**The Law Offices of Peter T. Nicholl**
36 S. Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.: (410) 244-8454

*Attorneys for Named-Plaintiff and the
Putative FLSA Collective*

* *admitted pro hac vice*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

Pursuant to L.R. 3.01(g) (M.D. Fla.), Named-Plaintiff certifies through counsel that counsel for Named-Plaintiff conferred with Defendant's counsel in good faith regarding this Motion, and Defendant opposes the issuance of notice. Plaintiff provided Defendant with authority for his position by electronic mail on February 4, 2022. The Parties conferred by phone on February 23, 2022, on the related issue of the sufficiency of the collective action allegations in the Complaint. Plaintiff filed an Amended Complaint on March 18, 2022. The Parties exchanged their positions on the sufficiency of the collective action allegations in the First Amended Complaint via email. On March 31, 2022, Defendant informed Plaintiff that it opposed Plaintiff's Motion for Issuance of Notice pursuant to § 216(b) of the FLSA.

Dated: April 12, 2022                          Respectfully submitted,

                                               /s/ *Maureen A. Salas*
                                               One of the Attorneys for Plaintiff

                                               Maureen A. Salas*
                                               msalas@flsalaw.com
                                               **Werman Salas P.C.**
                                               77 W. Washington St., Suite 1402
                                               Chicago, Illinois 60602
                                               Phone No.: (312) 419-1008
                                               Fax No.: (312) 419-1025

                                               * *admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was electronically filed and served on all Parties of record via the Court's CM/ECF filing system.

/s/ *Maureen A. Salas*
Maureen A. Salas