UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAM WHITEMAN, on behalf of
himself and others similarly
situated,

    Plaintiff,

v.                           Case No. 8:22-cv-56-VMC-CPT

KFORCE INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Sam Whiteman's Amended Motion for Issuance of Notice Pursuant to Section 216(b) of the Fair Labor Standards Act (Doc. # 74), filed on May 20, 2022. Defendant Kforce Inc. responded in opposition on June 3, 2022. (Doc. # 88). For the reasons that follow, the Motion is denied.

**I.   Background**

Mr. Whiteman initiated this Fair Labor Standards Act ("FLSA") action against his former employer, Kforce, on January 6, 2022. (Doc. # 1). He filed the amended complaint, asserting an unpaid overtime claim under the FLSA on behalf of a collective of other Kforce employees, on March 18, 2022. (Doc. # 43).

1

According to the amended complaint, Kforce is a Tampa-based "professional staffing agency that provides staffing services to its clients." (Id. at 1, 3). Mr. Whiteman worked as a "Recruiter" for Kforce in Kansas between November 2017 and December 2020. (Id. at 2). Although Kforce allegedly "employed [Mr. Whiteman], the opt-in Plaintiffs, and other Recruiters under various internal recruiting job titles" (sixteen different titles are mentioned), "Recruiters all performed the same job duties." (Id. at 9-11).

Now, Mr. Whiteman seeks conditional certification of this case as an FLSA collective action and permission to send notice to other potential class members. (Doc. # 74). He seeks to represent a collective of "All persons employed by Defendant as Recruiters since May 11, 2018, who were paid on a salary basis, and who were classified as overtime exempt," but excluding those who have signed an arbitration agreement and those who have released their FLSA claims as part of a previous case's settlement. (Doc. # 43 at 12; Doc. # 74 at 13). In the Motion, Mr. Whiteman points out that, at the time of the Motion, fifteen other Recruiters had opted-in. (Doc. # 74 at 15). Additionally, Mr. Whiteman and two opt-in Plaintiffs have filed declarations attesting that they believe other individuals will join this case if they are

2

made aware of its existence. (Doc. # 74-2; Doc. # 74-3; Doc. # 74-7).

Kforce has responded (Doc. # 88), arguing first that the Court should deny the Motion because there is no need to send judicially authorized notice to the same putative class and collective members who are part of the collective action settlement in the similar case pending in California state court, Elliott-Brand v. Kforce. (Doc. # 88). That case involves an FLSA overtime claim as well as claims under California law (including for failure to pay overtime). Elliott-Brand was filed on December 24, 2020 — long before this action was filed on January 6, 2022. But plaintiffs in Elliott-Brand asserted an FLSA claim for the first time in their amended complaint filed on January 7, 2022. (Id. at 3-4). Counsel for Kforce nevertheless avers that Kforce and Elliott-Brand had reached a settlement of both the California state claims and the FLSA claim during a private mediation held on November 12, 2021, which settlement required the filing of the amended complaint with the FLSA claim. (Id.; Doc. # 88-1 at Ex. C at ¶¶ 3-5).

In the motion for preliminary approval of the class and collective settlement in Elliott-Brand, the parties requested conditional certification of a FLSA collective including

specific recruiting positions with Kforce. (Doc. # 88-1 at Ex. C at ¶ 4); see also (Doc. # 88-1 at Ex. B at ¶ 22) (the Elliott-Brand amended complaint, seeking to represent a collective of "all current and former talent recruiters who worked for Defendants as employees nationwide and were classified as exempt from overtime from March 19, 2018 to the date of trial"). Pursuant to the Elliott-Brand court's oral ruling at a preliminary hearing, the parties in that case removed the language excluding from the collective individuals who had already asserted claims against Kforce through other counsel. (Id. at ¶ 9). As Kforce explains, "[t]his modification ensures that the Plaintiff and Opt-In Plaintiffs in this matter are included in the collective action settlement, although as a practical matter they can choose not to participate." (Doc. # 88 at 12).

On June 8, 2022, this Court deferred ruling on the instant Motion until the Elliott-Brand court decided whether to preliminarily approve the FLSA collective settlement and to conditionally certify the FLSA collective for the purposes of settlement in that case. (Doc. # 94). In doing so, the Court explained: "While multiple collective actions covering the same members are not prohibited by the FLSA, this Court tends to agree with those courts holding that conditional

4

certification of a second collective action does not promote judicial economy and creates the risk of confusion among potential collective members." (Id.).

Subsequently, the parties filed status reports informing the Court that the Elliott-Brand court had preliminarily approved the collective settlement on September 15, 2022. (Doc. ## 108-109). The FLSA collective in Elliott-Brand covers recruiters who held 23 different job titles and who worked anytime between March 19, 2018, and February 14, 2022. (Doc. # 131 at 1-2).

The Motion is ripe for review.

## II. Legal Standard

The FLSA expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. See 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In prospective collective actions brought pursuant to Section 216(b), potential plaintiffs must affirmatively opt into the collective action. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such

5

a party and such consent is filed in the court in which such action is brought.").

In making collective action certification determinations under the FLSA, courts typically follow a two-tiered approach:

> The first determination is made at the so-called notice stage. At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt in. The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)(internal citations and quotation marks omitted).

To maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008). Similarly situated employees must

6

affirmatively opt into the litigation by giving their consent in writing and filing their consent in the court in which such action is brought. 29 U.S.C. § 216(b).

At the notice stage, the Court should initially determine whether there are other employees who desire to opt into the action and whether the employees who desire to opt in are similarly situated. Morgan, 551 F.3d at 1259; Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567–68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218. Mr. Whiteman bears the burden of showing a reasonable basis for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Morgan, 551 F.3d at 1261 (internal citations omitted). Essentially, at this stage of the proceedings, the Court must determine whether there are other Kforce recruiters who are similarly situated and desire to opt in. Dybach, 942 F.2d at 1567–68.

### III. **Analysis**

"Although the FLSA does not require them to do so, 'the district courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential

7

plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" Schucker v. Flowers Foods, Inc., No. 16-CV-3439 (KMK), 2017 WL 3668847, at *2 (S.D.N.Y. Aug. 24, 2017) (quoting Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)); see also Auffray v. FXFL, LLC, No. 1:15-CV-9379-GHW, 2016 WL 6810863, at *2 (S.D.N.Y. Nov. 16, 2016) ("[T]he decision whether to grant a motion for conditional certification of an FLSA collective action lies within the discretion of the district court."). Pursuant to Section 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" activity and "avoiding a multiplicity of duplicative suits." Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 172 (1989). "[C]onditional certification of a collective action is not mandatory, even where named plaintiffs are able to show that they are similarly situated to potential opt-in plaintiffs." Auffray, 2016 WL 6810863, at *2.

The Court declines to conditionally certify the collective, given that the same collective is covered by the

Elliott-Brand collective settlement of the FLSA claim there.[1] The collective settlement covers a nationwide class of Kforce recruiters who were classified as exempt from overtime from March 19, 2018, to February 14, 2022 – a collective definition that encompasses the proposed collective in this case, with the exception of employees who held two job titles, "Market Manager – Talent Associate" and "VMO Recruiter" and with the exception of the time period after February 14, 2022.[2] (Doc.

---

[1] The Court is not declining certification pursuant to the first-filed rule, under which defendants often seek dismissal of the second-filed FLSA putative collective action. See Rodriguez v. Granite Servs. Int'l, Inc, No. 8:20-cv-2129-VMC-JSS, 2020 WL 6784116, at *2 (M.D. Fla. Nov. 18, 2020) ("Under the first-filed rule, when 'two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption . . . [favoring] the forum of the first-filed suit[.]' . . . 'The "first to file" rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.'" (citations omitted)). Rather, the Court utilizes its discretion to deny conditional certification under the circumstances because conditional certification would not further judicial economy. Thus, the parties' debate over which action should be considered first filed does not affect the Court's ruling.

[2] The Court notes that the named Plaintiff here, Mr. Whiteman, held the positions of Talent Associate and Market Manager during his employment with Kforce, which ended in December 2020. (Doc. # 43 at 4). Thus, because the Elliott-Brand collective covers Talent Associates who worked between March 2018 and February 2022, Mr. Whiteman falls within the collective definition in Elliott-Brand for one position he held and can opt-in to that collective settlement. Given that Mr. Whiteman falls within the Elliott-Brand collective and the putative collective in this case merely adds two

# 131 at 2-3). Importantly, that collective settlement has been preliminarily approved and notice of the settlement has been sent to the putative collective members already. See (Doc. # 109 at 1-2) (the deadline to mail the notice of settlement to all collective members in Elliott-Brand was October 13, 2022).

The Court is aware that there is no prohibition on the maintenance of more than one FLSA collective action covering the same collective members. Nevertheless, conditionally certifying another FLSA collective that covers the same Kforce employees who have already been sent notice of their opt-in rights in Elliott-Brand does not promote judicial efficiency. See Schucker, 2017 WL 3668847, at *6 ("Plaintiffs contend that the 'FLSA does not prohibit multiple collective actions.' The Court agrees, but again, that is not the issue raised by Defendants; the sole question here is whether certification of a duplicative collective action is a prudent and reasonable exercise of the Court's discretion. It is not, and numerous courts have agreed."); Mosley v. Hydrostatic Oil

---

additional job titles to the 23 covered by Elliott-Brand and extends the relevant period beyond February 2022, the Court does not consider these additions to the putative collective here significant enough to change the Court's analysis regarding the judicial economy of certifying a collective.

Tools, Inc., No. 1:20-CV-1040, 2021 WL 3134917, at *2 (W.D. Ark. July 23, 2021) ("The Court finds that certifying a second, competing collective action would risk undermining the primary goal of collective actions: avoiding multiplicity of similar suits and expediting the disposal of the actions through cut-off dates."); Brown v. Jacob Transportation, LLC, No. 216CV02436JADNJK, 2017 WL 7725268, at *4 (D. Nev. Sept. 28, 2017) (agreeing with the reasoning of Schucker and "find[ing] that certifying a second, competing collective action . . . would undermine rather than serve the legitimate goals behind the collective-action device"); Cunningham v. Hamilton-Ryker IT Sols., LLC, No. 3:21-CV-00302, 2022 WL 868709, at *5 (S.D. Tex. Feb. 16, 2022) (denying motion to dismiss under the first-filed rule but advising the parties that the court would be "reluctant to authorize repeat notice to those individuals who have already received notice" if the plaintiff later moved for conditional certification because "[i]ssuing repeat notice to potential class members defeats" the purpose of collective actions), report and recommendation adopted, No. 3:21-CV-00302, 2022 WL 861512 (S.D. Tex. Mar. 23, 2022).

"[A]t issue here is not a narrow or liberal construction of the statute, but rather a practical assessment of the

11

relative costs and benefits of allowing [Mr. Whiteman] to maintain a collective action that appears to serve little purpose in enforcing the FLSA rights of potential class members." Schucker, 2017 WL 3668847, at *5. Mr. Whiteman seems to assume that numerous Kforce recruiters will choose not to opt-in to the Elliott-Brand collective but will opt-in to this collective action. But this "assumption belies commonsense, as there is no reason to infer that a potential opt-in plaintiff will be spurred to action by a second notice, but not the first." Id. at *6. To the extent a Kforce recruiter considers the monetary recovery under the Elliott-Brand collective settlement inadequate, he may choose not to opt-in and instead pursue his claims individually to obtain full relief. There is no reason to believe that Mr. Whiteman would obtain better results for potential opt-ins in this case, such that the Court is skeptical that Kforce recruiters would opt-in here despite their earlier choice not to opt-in in Elliott-Brand. See Lau v. Wells Fargo & Co., No. 20-CV-03870 (AJN), 2021 WL 1198964, at *3 (S.D.N.Y. Mar. 30, 2021) ("[A]side from consuming judicial resources, a duplicative collective action does not provide significant value to the class.").

Furthermore, conditionally certifying an overlapping collective in this action and issuing notice will likely confuse potential collective members about their rights. See Mosley, 2021 WL 3134917, at *2 ("In allowing duplicative collective actions to proceed, the Court risks confusion of current collective members in Attaway and potential collective members in the present case regarding their legal options."); Schucker, 2017 WL 3668847, at *7 (noting "the risk of confusing potential collective members about their legal options" if notice were sent to the same individuals who had previously been sent notice in an earlier collective action).

If the Elliott-Brand court denies final approval of the collective settlement after hearing objections, Mr. Whiteman may inform the Court and request what relief he considers proper at that time.[3]

---

[3] This is not to suggest that the Court would necessarily permit Mr. Whiteman to renew his request for conditional certification at any time if the Elliott-Brand collective settlement is not finalized. The Court has entered a Case Management and Scheduling Order for this case, under which the deadline to move for decertification is February 22, 2023. (Doc. # 91). The deadline to file dispositive motions is May 1, 2023, with the case set for an October 2023 trial term. Depending on when the Elliott-Brand court issues its final decision on the collective settlement, this case may well be too far along in progress to revisit conditional certification.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Sam Whiteman's Amended Motion for Issuance of Notice Pursuant to Section 216(b) of the Fair Labor Standards Act (Doc. # 74) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of November, 2022.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE